# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

PUSH BRAND, LLC,

                Plaintiff,

vs.

KASPER AI, INC. f/k/a KASPER, LLC; DR. AHMAD K. OSMAN, JAY WHITEHEAD, JOHN and/or JANE DOES 1-10 (fictitious names whose present identities are unknown), and ABC CORPORATIONS 1-10 (fictitious entities whose present identities are unknown),

                Defendants.

Civil Action No.: 6:21-cv-01709

**COMPLAINT**
**JURY TRIAL DEMANDED**

Plaintiff, Push Brand, LLC, formerly doing business as Push Agency, LLC (together, "Push" or "Plaintiff"), by and through its undersigned, attorneys, against Defendant, Kasper AI, Inc. f/k/a Kasper, LLC, ("Kasper" or "Defendant"), hereby alleges as follows:

## THE PARTIES

1. Plaintiff is a Texas Limited Liability Company with a business address of 5237 China Berry Drive, McKinney, Texas 75070.

2. On in mation and belief, Defendant Kasper is a Delaware corporation with a business address of 44 S. Martine Avenue, Fanwood, New Jersey 07023.

3. On information and belief, Defendant Dr. Ahmad K. Osman is an individual with a business address of 44 S. Martine Avenue, Fanwood, New Jersey 07023.

4. On information and belief, Defendant Jay Whitehead is an individual with a business address of 44 S. Martine Avenue, Fanwood, New Jersey 07023.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction pursuant to the RICO count herein, and supplemental jurisdiction over the remaining state counts asserted herein. This Court also has diversity jurisdiction over the parties with different foreign citizenships and the amount in controversy exceeding $75,000.

6. Venue is appropriate in the Middle District of Florida pursuant to the Agreement referenced below.

## FACTUAL BACKGROUND

7. Plaintiff is a company that provides computer software development, software engineering, media management, growth marketing and technical services for businesses in multiple different industries.

8. On or about May 17, 2020, Plaintiff entered into a written Software Development Agreement (the "Agreement") with Defendant to provide software development services on a sprint-by-sprint basis.  See **Exhibit A**.

9. Pursuant to the Agreement, Plaintiff was supposed to be paid for its services.

10. Kareem Elgendy, as a member of Plaintiff, engaged in branding efforts for Defendant, going beyond its contractual requirements as set forth in the Agreement, to try to get funding for Defendant.

11. Specifically in April 2020, Plaintiff engaged in a branding effort in a trade show in Miami, Florida which resulted in Defendant obtaining $2.2 million in funding for its company, and its company being evaluated at a $20 million.

12. Plaintiff fully complied with the Agreement by way of developing code for Defendant.

13. Plaintiff's efforts were so precise that based off the work done by the Plaintiff, and not paid for by the Defendant, the Defendant was able to raise over $2,200,000.00.

14. Defendant initially complied with the fee schedule as set forth in the Agreement by paying Plaintiff for services rendered.

15. For example, Defendant paid Plaintiff in the amount of $300,000.00.

16. On or around July 9, 2021, Defendant paid Plaintiff in the amount of $200,000.00.

17. On or around August 17, 2021, Defendant paid Plaintiff in the amount of $150,000.00.

18. Defendant paid its last full invoice to Plaintiff on February 24, 2021.

19. Thus, and to date, Plaintiff is owed well over $600,000.00 for code it developed to Defendant.

20. Further, Elgendy had his personal laptop stored at Defendant's business address.

21. On or around September 29, 2021, at around 11:30 pm, Defendants broke into his personal laptop, and improperly access his personal files, including WhatsApp messages between him and another member of Plaintiff, Aimann Rasheed.

22. Thereafter, on or about October 8, 2021, at approximately 3:00 pm, Rasheed received a call from the CEO of Defendant, Dr. Ahmad K. Osman.

23. Osman was screaming at Rasheed and indicated that he needed to immediately go to Chase Bank located at 1224 Stuyvesant Avenue, Union, New Jersey 07083 or else would face jail amongst other veiled empty threats.
24. Osman's partner, Mahmoud Elmedani, picked up Rasheed and Osman and drove him to Chase Bank against his will.
25. There, he was forced to transfer over $175,000.00 from Plaintiff's business account to Defendant's account.
26. Thus, Rasheed, fearing jailtime, and while under duress, transferred over $175,000.00 from Plaintiff's business bank account to Defendant.
27. Thereafter, at around 4:30 p.m., Elgendy received a call from Rasheed who told him he could not talk but that he had to show up to Defendant's Fanwood office location at 9 p.m.
28. Elgendy showed up at around 9 p.m., where he was the last to arrive to the conference room of a table filled with Osman, Whitehead, Rasheed, among others.
29. Two pieces of paper were laid out on the table where Elgendy was sitting, which were printed from Wikipedia labeled "wire fraud" and "misappropriation."
30. Osman screamed at Elgendy and indicated that he committed wire fraud, misappropriation, would face jail and would never see his children again.
31. In fact, Osman engaged in the utmost form of theatrics wherein he held handcuffs in the air, which he later shattered to the floor, along with displaying a chess board on the table and a white board indicating that Plaintiff engaged in wrongdoing.
32. Osman screamed at Elgendy and threatened that he would go to jail for misappropriating Defendant's funds and committing wire fraud.

33. Elgendy was then taken to a separate room, accompanied by only Jay Whitehead, a board member of Defendant, who told Elgendy to propose a number as to how much he was willing to pay Defendant to avoid facing jailtime.

34. Elgendy wrote the number "$220,000.00" on a piece of scrap paper.

35. Whitehead then left the room and then came back to Elgendy who told him that the CEO was feeling really generous and wanted only $55,000.00 from his personal account to be transferred to Defendant by Monday, October 11, 2021, as well as $55,000 from his personal account to be paid within two years and for Plaintiff to transfer all of its intellectual property rights to Defendant.

36. Rasheed was offered another deal separate from Elgendy, which was to pay an additional $125,000.00 but in the form of golden handcuffs.

37. Defendant was trying to extort Plaintiff of monies, in an attempt to avoid having to pay Plaintiff debt due and owing, and in an attempt to obtain all of its intellectual property rights to software Plaintiff developed.

38. The meeting concluded at around midnight.

39. Elgendy nor Rasheed have transferred over money to Defendant.

40. Osman has persistently contacted Elgendy and Rasheed demanding that they wire him the money or face criminal consequences.

<u>**COUNT I**</u>

<u>**BREACH OF CONTRACT**</u>

41. Plaintiff restates and realleges the allegations contained in the previous paragraphs as if set forth fully herein.

42. An Agreement was entered between Plaintiff and Defendant whereby Plaintiff would develop code for Defendant in exchange for payment, to be paid in twelve sprints.

43. In consideration of the offer and acceptance of the parties, Defendant promised to pay to Plaintiff a sum certain amount pursuant to the Agreement.

44. At the time of the execution of the Agreement, and unbeknownst to Plaintiff, Defendant did not intend to comply with the terms of the Agreement.

45. Defendant breached the terms of the Agreement by withholding monies owed to Plaintiff.

46. As a result of Defendant's breach of contract Plaintiff suffered damages.

      **WHEREFORE**, Plaintiff, Push, respectfully demands judgment against Defendant Kasper for compensatory damages, punitive damages, together with interest, costs, reasonable attorney's fees, and such other and further relief as this Court will deem equitable and just.

## COUNT II
## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING AS WELL AS LOYALTY

47. Plaintiff restates and realleges the allegations contained in the previous paragraphs as if set forth fully herein.

48. In every contract there is an implied covenant of good faith and fair dealing.

49. Defendant breached the implied covenant of good faith and fair dealing by failing to remit monies owed to Plaintiff in connection with the Agreement with Defendant.

50. As a result of Defendant's breach of the implied covenant of good faith and fair dealing Plaintiff suffered damages.

**WHEREFORE**, Plaintiff, Push, respectfully demands judgment against Defendant Kasper for compensatory damages, punitive damages, together with interest, costs, reasonable attorney's fees, and such other and further relief as this Court will deem equitable and just.

## COUNT III

### QUANTUM MERUIT

51. Plaintiff restates and realleges the allegations set forth in the above paragraphs as if same was set forth herein.

52. Plaintiff rendered services by way of developing software development to Defendant.

53. Defendant has failed to pay for the reasonable value of the services.

54. As a result, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff, Push, respectfully demands judgment against Defendant Kasper for compensatory damages, punitive damages, together with interest, costs, reasonable attorney's fees, and such other and further relief as this Court will deem equitable and just.

## COUNT IV

### CONVERSION

55. Plaintiff restates and realleges the allegations set forth in the above paragraphs as if same was set forth herein.

56. Plaintiff, as a developer of software technology, has an ownership interest in the coding technology it develops.

57. Plaintiff and Defendant entered into an Agreement wherein in consideration of Plaintiff's performance of coding technology services, Defendant would pay Plaintiff for its coding technology, which were to be paid in sprint.

58. Defendant has withheld money from Plaintiff.

59. In wrongfully keeping Plaintiff's money, Plaintiff has an ownership interest in its money and Defendant has acted improperly and have wrongfully exercised dominion and control over the code.

60. By wrongfully exercising dominion ad control over these funds, Defendant has improperly converted those funds.

61. As a direct and proximate result thereof, Plaintiff has suffered damages and loss of control of funds it has an ownership interest in.

    **WHEREFORE**, Plaintiff, Push, respectfully demands judgment against Defendant Kasper for compensatory damages, punitive damages, together with interest, costs, reasonable attorney's fees, and such other and further relief as this Court will deem equitable and just.

## COUNT V

## CIVIL RICO

Civil Racketeer Influenced and Corrupt Organizations (RICO))

62. Plaintiff restates and realleges the allegations set forth in the above paragraphs as if same was set forth herein.

63. At various times and places, Defendants, engaged in more than two predicate acts embracing fraudulent practices by unlawfully breaking into Elgendy's s personal computer, taking data and information without his consent, and extorted and intimidate Aimann by taking him against his will into Chase Bank, forcing him through fear and threats to wire $175,000.00 out of a business bank account to Defendant.

64. Defendants' incidents of racketeering activity embrace criminal conduct and has the same or similar purpose of criminal practice.

65. Defendants' repeated incidents of engaging in criminal acts are interrelated and not isolated incidents.

66. That Defendants be required to account for all gains, profits, and advantages derived from their several acts of racketeering activity in violation(s) of applicable State and federal law(s).

67. That judgment be entered for Plaintiff and against all Defendants for Plaintiff's actual damages, and for any gains, profits, or advantages attributable to all violations.

68. That all Defendants pay to Plaintiff treble (triple) damages.

   **WHEREFORE**, Plaintiff, Push, respectfully demands judgment against Defendant Kasper, Dr. Ahmad K. Osman and Jay Whitehead for compensatory damages, punitive damages, together with interest, costs, reasonable attorney's fees, and such other and further relief as this Court will deem equitable and just.

## COUNT VI

## FRAUD

69. Plaintiff restates and realleges the allegations contained in the previous paragraphs as if set forth fully herein.

70. Defendants made representations to Plaintiff regarding Plaintiff's Agreement with Defendants.

71. The representations made by Defendants were material to Plaintiff's executing the Agreement with Defendants.

72. Defendants seek to take the intellectual property of the Plaintiffs absent compensation, by utilizing the benefit of the work to raise millions of dollars without compensation to the plaintiff.

73. Defendants knew this material representation to be false but intended Plaintiff rely upon this material misrepresentation to enter in the Agreement with Defendants.

74. Plaintiff did rely on Defendants' material misrepresentations in its execution of the Agreement with Defendants.

75. If not for Defendants' knowing material misrepresentations Plaintiff would not have executed its Agreement with Defendants.

76. As a result of Plaintiff's reliance on the material misrepresentations of Defendants, Plaintiff suffered damages.

77. Defendants' fraud caused Plaintiff to suffer damages.

**WHEREFORE**, Plaintiff, Push, respectfully demands judgment against Defendant Kasper for compensatory damages, punitive damages, together with interest, costs, reasonable attorney's fees, and such other and further relief as this Court will deem equitable and just.

## COUNT VII

### UNJUST ENRICHMENT

78. Plaintiff restates and realleges the allegations contained in the above stated paragraphs as if same were set forth fully herein.

79. Defendant received benefits from Plaintiff when Plaintiff provided its services to Defendant.

80. Defendant failed to properly compensate Plaintiff.

81. Plaintiff expected to be compensated when it conferred the benefit to Defendants.

82. Defendant was unjustly enriched beyond their contractual rights when it did not confer all benefits to which Plaintiff was entitled.

**WHEREFORE**, Plaintiff, Push, respectfully demands judgment against Defendant Kasper for compensatory damages, punitive damages, together with interest, costs, reasonable attorney's fees, and such other and further relief as this Court will deem equitable and just.

### JURY TRIAL DEMAND

Plaintiff hereby demands jury on all issues so triable.

DATED: October 14, 2021

                              Respectfully submitted,

                              By: /s/ *Ahmad S. El-Gendi*
                              Ahmad S. El-Gendi
                              Fla. Bar No.: 119139
                              7335 W. Sand Lake Road, Suite 300
                              Orlando, FL 32819
                              (321) 270-0434 (phone)
                              Email: Ahmad@newlinlaw.com

                              and

                              *Attorneys for Plaintiff*

                              **AMERI LAW FIRM LLC**
                              Nima Ameri, Esq. - 026912011
                              58 Main Street, 3rd Floor
                              Hackensack, New Jersey 07601
                              T: 201-880-8999
                              F: 201-580-4311
                              *Attorneys for the Plaintiff Push*
                              (Subject to Pro Hac Vice Admission)